The Full Commission having reviewed the record of evidence, together with the briefs and arguments of counsel, modifies and affirms the Opinion and Order of the deputy commissioner. The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement which was filed on May 19, 2000, which is incorporated herein by reference, and at the deputy commissioner's hearing as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Lumbermens Mutual Casualty Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. The plaintiff's average weekly wage was $400.40, which yields a compensation rate of $266.95 per week.
5. On or about July 18, 1997, plaintiff sustained an injury by accident arising out of and in the course of his employment, which resulted in injuries to his thighs and knees. The defendants filed a Form 60, Employer's Admission of Employee's Right to Compensation, on January 5, 1998, pursuant to which the plaintiff has received temporary total disability benefits for three and five-sevenths weeks, for the period of time he was temporarily totally disabled from work between December 11, 1997 and January 4, 1998.
6. The issue for determination is to what additional disability benefits and medical compensation may plaintiff be entitled as a result of the compensable injury?
7. The parties stipulated medical reports into the record:
a. Dr. William A. Kutner, Jr., twenty pages,
b. Dr. Thomas E. Sikes, one page,
c. Dr. Tony Hawes, seventeen pages, and
d. Dr. Brian Blackburn, four pages.
8. The following exhibits were received into evidence:
a. Plaintiff's 1995-99 Tax Returns;
b. Videotape and written description for Doffer job;
c. Plaintiff's earnings, July 1997 to January 2000; and
d. Plaintiff's Attendance Records.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following additional
 FINDINGS OF FACT
1. On March 21, 1994, plaintiff began working for the defendant-employer in the printing and coating department, where he worked as a calendar operator. At the time of the hearing, he was a sixty-six year old male. Plaintiff had an Associate Degree in Business, and he worked for almost thirty years in the textile industry as a computer operator/data processor and bookkeeper.
2. On July 18, 1997, a number of large rolls of sheeting material fell against plaintiff's legs, pushing him back against a two-inch round steel bar. The rolls weighed several hundred pounds. Plaintiff reported this incident to his supervisor, Rick Lawing.
3. On July 21, 1997, plaintiff was sent to Dr. Brian Blackburn, where he was diagnosed with a large contusion of the posterior thigh. Dr. Blackburn placed plaintiff on light duty work. Plaintiff was subsequently referred for an orthopedic evaluation after he did not improve.
4. On September 17, 1997, Dr. William A. Kutner, Jr., an orthopedic surgeon with Charlotte Orthopedic Specialists, evaluated plaintiff for complaints of left leg swelling and popping in the left knee. Following diagnostic testing, Dr. Kutner diagnosed plaintiff with a torn left medial hamstring. An MRI revealed degenerative changes in the lateral meniscus and severe patellofemoral arthritis. Dr. Kutner continued plaintiff's work restrictions of standing for not over half an hour at a time. Therapy was also ordered.
5. After conservative treatment did not relieve plaintiff's left knee pain, Dr. Kutner recommended arthroscopic surgery to evaluate the knee. On December 11, 1997, Dr. Kutner performed a debridement and partial lateral meniscectomy. The arthroscopy revealed severe patellofemoral arthritis, minimal cartilage under the patella, deep grooves under the femur, fraying of the posterior horn of the medial meniscus, osteophytes closing the notch at the anterior cruciate, a large osteophyte on the front of the knee, and tearing of the inner edge of the meniscus.
6. Plaintiff was temporarily totally disabled from earning wages from December 11, 1997 until January 4, 1998, as a result of the left knee surgery. Dr. Kutner restricted plaintiff to avoid standing for more than half-an-hour at a time.
7. Plaintiff returned to work for the defendant-employer on January 5, 1998 at the same or greater wages. He was initially assigned to work in the packaging department, which was suitable to his restrictions. After the packaging was moved from the Mooresville Plant, plaintiff was assigned office duties.
8. On January 7, 1998, plaintiff was evaluated at Lake Norman Center for Rehabilitation. By February 2, 1998, plaintiff's left knee edema and effusion had resolved. Plaintiff was discharged from the rehabilitation program after he did not return.
9. By February 9, 1998, Dr. Kutner restricted plaintiff to avoid prolonged standing, bending, squatting, and crawling.
10. Dr. Kutner found plaintiff had reached maximum medical improvement by March 11, 1998. He restricted plaintiff to no standing for more than an hour at a time and no crawling or stooping. Dr. Kutner found plaintiff to retain fifteen percent (15%) permanent partial impairment to the left knee, not including impairment from pre-existing arthritis in the knee.
11. On or about March 11, 1998, defendants assigned plaintiff to the doffer job, where his duties included monitoring the fabric being fed into rolls, removing the finished rolls of fabric from the frame to a holding area, washing screens, and setting up the machine for a new cycle.
12. The doffer job which plaintiff performed between March 11, 1998 and January 21, 2000 was a regular job in existence at defendant-employer's textile plant.
13. The defendant-employer made reasonable accommodations to the doffer job in order to adapt the job to plaintiff's permanent medical restrictions. Accommodations included providing plaintiff with a stool, providing assistance to him, and allowing him to use the electric hand truck to move the rolls. Greater weight of the evidence showed that these or similar accommodations would be made to other employees of defendant-employer, if requested, and that these accommodations are used by some other employers in the same industry. Therefore, this position was not "make work" employment, but was an accepted and available position in the industry.
14. In October of 1998, the defendant-employer changed its work schedule from five eight-hour shifts per week to four ten-hour shifts per week. Plaintiff asked if he could continue to work the eight-hour shifts rather than the new ten-hour shifts. Plaintiff did not have a doctor's excuse or recommendation requesting the reduction of hours, nor was there any evidence that the reduction in hours was medically necessary. Defendant-employer further accommodated plaintiff by allowing him to continue to work an eight-hour workday.
15. Plaintiff last saw Dr. Kutner on December 9, 1998. Dr. Kutner confirmed that plaintiff had reached maximum medical improvement and retained a fifteen percent (15%) permanent partial impairment to the left leg, based upon the Commission's Rating Guide. He found plaintiff capable of continuing to work with permanent restrictions of avoiding prolonged standing, crawling and climbing.
16. In November or 1998, plaintiff told Rick Lawing that he planned to retire at the end of the year. However, plaintiff did not relate this decision to any inability to work due to the left leg injury. Plaintiff retired from work effective January 21, 2000.
17. Plaintiff saw Dr. Thomas Sikes of Northeast Orthopedics on July 23, 1999 for a second opinion on the rating. Dr. Sikes found plaintiff to retain a twenty-five percent (25%) permanent partial impairment to the left leg due to the hamstring and knee injuries, but excluding the pre-existing arthritis. Dr. Sikes found plaintiff to have a fifty percent (50%) impairment to his left leg; the additional impairment was for pre-existing arthritis in plaintiff's knee.
18. The competent medical evidence in the record supports a finding that the compensable injury caused plaintiff's left hamstring tear, tearing of his meniscus, and aggravated the pre-existing degenerative arthritic condition in his left knee.
19. Plaintiff would probably require left knee replacement surgery in the future regardless of whether he had sustained an injury by accident. However, the compensable injury has significantly aggravated the pre-existing condition, making it more likely.
20. Based upon the medical evidence and in accordance with the Commission's Rating Guide, plaintiff is found to retain a twenty-five percent (25%) permanent impairment to the left leg as a result of the compensable injury. The Full Commission finds that the twenty-five percent (25%) impairment rating is supported by the greater weight of the evidence because Dr. Sikes appears to have performed a more through examination for the purpose of determining the impairment and gave a more through explanation of the basis for his impairment rating.
 ***********
Based on the foregoing stipulations and findings of facts, the Full Commission hereby finds the following as
 CONCLUSIONS OF LAW
1. The plaintiff is entitled to permanent partial disability compensation at the rate of $266.95 per week for fifty (50) weeks as a result of the twenty-five percent (25%) percent rating to the left leg. N.C. GEN. STAT. § 97-31(15).
2. The plaintiff is entitled to have the defendants pay for medical expenses incurred or to be incurred, as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. GEN. STAT. § 97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Subject to a reasonable attorney's fee herein approved, the defendants shall pay permanent partial disability compensation to the plaintiff at the rate of $266.95 for fifty (50) weeks. Said compensation has accrued and shall be paid in a lump sum, subject to attorneys fees which are awarded below.
2. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and paid directly to counsel.
3. Defendants shall pay medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Defendants shall pay the costs, including an additional expert witness fee of $220.00 to Dr. Kutner.
 S/______________ RENE C. RIGGSBEE COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_____________ THOMAS J. BOLCH COMMISSIONER